**Jennifer and Monica OSEI–AFRIYIE, minors, Individually, by their parent, Francis OSEI–AFRIYIE, and in his own right, Appellants,**

v.

**The MEDICAL COLLEGE OF PENNSYLVANIA and Stull, Terrence Lee, M.D., Appellees.**

**No. 90–1642.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 14, 1991.

Decided July 1, 1991.

Rehearing and Rehearing In Banc Denied July 26, 1991.

Francis Osei–Afriyie, Dover, Del., pro se and for appellants.

Patrick O. McDonald, McDonald & Snyder, Philadelphia, Pa., for appellees.

Before SLOVITER, HUTCHINSON and ALITO, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Francis Osei–Afriyie (Osei–Afriyie), in his own right and as the father of minors Jennifer and Monica Osei–Afriyie (the children), appeals from a jury verdict entered against him and his daughters in the United States District Court for the Eastern District of Pennsylvania. The jury found that Osei–Afriyie did not bring this suit on behalf of himself and his children soon enough to meet the applicable statutes of limitations.

Osei–Afriyie, who is not a lawyer, represented himself and his children at trial without the assistance of legal counsel. Osei–Afriyie continues to represent himself and his children *pro se* on appeal. The complaint at issue here raised a plethora of

claims against the Medical College of Pennsylvania (the hospital) and one of the hospital's doctors following successful treatment of the children for malaria they contracted during a visit to Africa.

For the reasons set forth below, we will affirm the jury's verdict to the extent that it found Osei–Afriyie's own claims to be time-barred. However, we will vacate that portion of the jury's verdict that dismissed the children's claims because we hold that, in accord with the two other courts of appeals that have considered this issue, a parent who is not an attorney must be represented by legal counsel in bringing an action on behalf of his or her minor children.

## I.

Osei–Afriyie and his children visited Ghana, Africa, from February through early July of 1985. Upon their return to the United States, the children displayed signs of ill health: both suffered from distended abdomens and a fever, and Monica evidenced dehydration and malnutrition. Soon after their return, the children were admitted into St. Christopher's Hospital, where they were diagnosed as suffering from inflammation of the middle ear. The children were treated and discharged from St. Christopher's.

In the early morning hours of July 25, 1985, Jennifer's mother observed that Jennifer suffered from a fever, diarrhea and convulsions. Monica also had a fever and diarrhea. At 6:30 a.m. on July 25, 1985, the children arrived in the emergency room of the Medical College of Pennsylvania. In the emergency room, Jennifer, who was then two and one-half years old, was found to have a fever of 105.8 degrees. Monica, who was then ten months old, was found by emergency room staff to have a fever of 103.6 degrees. Following blood tests, both children were diagnosed as suffering from the most serious form of malaria. While a parasite level of six percent is considered unusually high, the hospital reports that the children displayed parasite levels of nearly twenty-five percent. In his complaint, Osei–Afriyie claims that the children's parasite levels never exceeded thirteen percent.

Malaria has been nearly eradicated within the United States. As a result, drug manufacturers no longer regularly produce Quinine, the federally-approved drug for combating the illness, nor do hospitals keep a supply of Quinine on hand. Instead, the Centers for Disease Control (CDC) in Atlanta, Georgia, is the sole source of the drug. When doctors at the hospital contacted the CDC and requested Quinine, CDC officials informed the doctors that it would take eight to twelve hours before the drug arrived in Philadelphia.

Given the children's precarious condition, doctors at the hospital did not believe it would be wise to postpone treatment until the Quinine arrived. Instead, the doctors began to treat the children with Quinidine, a drug that was known to combat malaria but that the Food and Drug Administration (FDA) has approved only for the treatment of irregular heartbeats.

Osei–Afriyie claims that the doctors did not ask his permission to treat the children with Quinidine until hours after the treatment began. The hospital, on the other hand, states that Osei–Afriyie initially gave permission to use Quinidine on the children. In addition to the drug treatment, the hospital also performed blood transfusions upon Monica, since doctors suspected that she had a cerebral infection from the malaria.

According to Osei–Afriyie, when he learned that the hospital had begun to administer Quinidine to his children, he asked the hospital to stop use of the drug, since it was not an FDA-approved treatment for malaria. Despite the fact that Quinidine was an experimental drug in the treatment of malaria, it worked quite successfully in combating the children's malaria. On the day after they had been admitted into the hospital, both children exhibited greatly reduced blood parasite levels of under two percent. That day, Quinine arrived at the hospital, but the hospital did not administer it since the children had already displayed such marked improvement and since no one

knew the effects of administering Quinine and Quinidine together to the same patient.

Following their treatment with Quinidine, both children made complete recoveries. Before leaving the hospital, Osei–Afriyie states in the complaint that he expressly refused to give permission to have information about the successful treatment of his daughters reported in any medical publications.

In the May, 1987 edition of the Journal of Infectious Diseases, Dr. Terrence L. Stull (Stull) of the Medical College of Pennsylvania published an article entitled "Continuous–Infusion Quinidine Gluconate for Treating Children with Severe *Plasmodium falciparum* Malaria." In the article, Dr. Stull told the story of his successful treatment of the children's malaria. Neither child was identified by name; Monica was referred to as "sibling A" and Jennifer was referred to as "sibling B." However, the article was not totally bereft of identifying details: for example, it mentioned that the children contracted malaria during a five-month visit to the west African nation of Ghana.

In the July 13, 1989 issue of the New England Journal of Medicine, doctors from the malaria branch at the Centers for Disease Control published an article entitled "Treatment of Severe Malaria in the United States with a Continuous Infusion of Quinidine Gluconate and Exchange Transfusion." This article also included an account of the treatment the children received, but once again they were not directly identified. Dr. Stull did not write or participate in the publication of this second article, but its authors relied upon Dr. Stull's article as a source.

On March 7, 1990, Osei–Afriyie filed a *pro se* complaint in the United States District Court for the Eastern District of Pennsylvania against the hospital and Dr. Stull. The plaintiffs named in the complaint were Osei–Afriyie in his own right and Osei–Afriyie on behalf of his two minor children. In the twelve page, single-spaced complaint, Osei–Afriyie alleged claims on behalf of the children for assault and battery, negligence, lack of informed consent, "wrongful discharge" of confidential information and invasion of privacy. In his own right, Osei–Afriyie alleged, at a minimum, a claim for intentional infliction of emotional distress. He also sought to recover punitive damages on behalf of himself and the children.

In the complaint, Osei–Afriyie attempted to invoke the district court's jurisdiction in two ways, by alleging diversity of citizenship and by claiming that his complaint contained claims that arose under federal law. Aside from citing several sections from the Code of Federal Regulations, Osei–Afriyie mentioned 42 U.S.C.A. § 1983 (West 1981), which permits a suit against state actors for deprivations of rights secured under federal law, and 21 U.S.C.A. § 355(i) (West 1972), which concerns use of experimental drugs in research.

On June 28, 1990, the hospital and Dr. Stull moved for partial summary judgment. The hospital and Dr. Stull argued, in part, that the claim Osei–Afriyie brought in his own right was barred under the applicable statute of limitations. *See* Appendix (App.) at 75. On July 9, 1990, the hospital and Dr. Stull filed another motion for summary judgment, this time focusing on the children's invasion of privacy claim. The district court denied both motions for summary judgment.

On July 16, 1990, the suit came to trial before a jury. The district court ruled that the trial would be "trifurcated." First, the jury would hear evidence pertinent to whether the suit was commenced within the statutes of limitations applicable to the various claims set forth in the complaint. Then, if any claims survived the statutes of limitations phase of the trial, the liability and damages phases would begin.

The sole witness at the statutes of limitations phase was Grace Atea Ampofoh (Ampofoh), who is Osei–Afriyie's wife and the mother of the children. She testified that Osei–Afriyie learned on the morning of July 25, 1985 that the children received Quinidine. Osei–Afriyie did not introduce any testimony whatsoever as to when he learned of the articles mentioned in his complaint.

Following Ampofoh's testimony, the district court allowed the parties to make some closing remarks and then charged the jury on the statutes of limitations that applied to each of Osei–Afriyie and his children's claims. The parties agree that Pennsylvania law is applicable to the state law claims raised in the complaint. The district court told the jury that under Pennsylvania law there is a two year statute of limitations applicable to the children's claims for assault and battery, negligence, lack of informed consent and wrongful discharge of confidential information. *See* 42 Pa.Cons.Stat.Ann. § 5524(1), (2), (7) (Purdon Supp.1991). The district court explained to the jury that under Pennsylvania law there is a one-year statute of limitations applicable to the children's claim of invasion of privacy. *See* 42 Pa.Cons.Stat. Ann. § 5523(1) (Purdon Supp.1991). The district court dismissed that part of their invasion of privacy claim resulting from the article published in the New England Journal of Medicine, since Dr. Stull did not write or actively contribute to that article. *See* App. at 38. As to Osei–Afriyie's own claim that he suffered intentional infliction of emotional distress, the district court instructed the jury that under Pennsylvania law a two-year statute of limitations applied. *See* 42 Pa.Cons.Stat.Ann. § 5524(7) (Purdon Supp.1991).

After delivering these instructions, the district court asked Osei–Afriyie and the attorney who represented both the hospital and Dr. Stull to engage in a discussion at sidebar out of the jury's hearing. Following the sidebar conference, the district court gave the following instruction:

> Ladies and gentlemen of the jury, if you find that there was anything hidden from the plaintiff, that in other words, he could not discover this then the statute did not begin to run. His position is that it was hidden—he claims that Dr. Stull conducted studies of the use of Quinoidine [sic] and—if you find that was hidden from him and he could not discover it, the statute could not begin to run.

App. at 42–43. Then, the district court sent the jury to begin its deliberations. Osei–Afriyie did not make a timely objection to any of the district court's instructions before the jury retired to begin its deliberations.

The next morning, the jury returned its verdict. It found that, under Pennsylvania law, the statute of limitations had expired with respect to each of the children's claims and Osei–Afriyie's claim in his own right. The district court entered judgment in favor of the hospital and Dr. Stull on July 17, 1990.

On July 26, 1990, Osei–Afriyie filed a motion for reconsideration on behalf of himself and his children. In the motion, Osei–Afriyie advanced three grounds for a new trial. First, he argued that the district court "erred in instructing the jury that the suit was based on medical malpractice." Second, he contended that "the decision to instruct the jury on the statute of limitations was erroneous." Finally, he averred that "the types of instructions the jury received from the Court was [sic] erroneous." On August 20, 1990, the district court entered an order dismissing the motion for reconsideration due to lack of prosecution. The district court ruled that Osei–Afriyie had failed to comply with Rule 20(e) of the Local Rules of the United States District Court for the Eastern District of Pennsylvania, which states:

> Within ten (10) days after filing any post-trial motion, the movant shall either (a) order a transcript of the trial by a writing delivered to the Court Reporter Coordinator, or (b) file a verified motion showing good cause to be excused from this requirement. Unless a transcript is thus ordered, or the movant excused from obtaining a transcript, the post-trial motion must be dismissed for lack of prosecution.

On August 24, 1990, Osei–Afriyie filed this appeal on behalf of himself and his children. In the notice of appeal, he sought review of the district court's judgment entered July 17, 1990 and the district court's order dismissing his motion for reconsideration entered August 20, 1990. We have jurisdiction over this appeal since it was timely filed after the district court entered

its final order on August 20, 1990. *See* 28 U.S.C.A. § 1291 (West Supp.1991).

On appeal, Osei–Afriyie continues to appear *pro se* on his own behalf and on behalf of his children. He raises numerous arguments upon appeal. First, he contends that the district court misread his complaint and treated it solely as a claim of medical malpractice. Second, he claims that the district court incorrectly charged the jury on Pennsylvania case law providing, under the so-called discovery rule, that the applicable statute of limitations does not begin to run in certain suits until a plaintiff knew or reasonably should have known that he had a cause of action. *See, e.g., Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983) (discovery rule "arises from *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause") (emphasis in original); *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) (announcing discovery rule in context of medical malpractice case). Third, Osei–Afriyie argues that the district court should have had the jury decide only whether the statute of limitations on his own claim of intentional infliction of emotional distress had run, since the statute of limitations as to each of his children's claims was tolled until the particular child reached the age of majority. Fourth, Osei–Afriyie contends that the district court should not have dismissed his post-trial motion for reconsideration for lack of prosecution since he attached to it sufficient materials to permit a decision on its merits. Finally, Osei–Afriyie maintains that certain statements the district judge made to him, both after the jury had retired to deliberate and after its verdict, indicate unfairness and prejudice that required the district judge to recuse.

## II.

The district court exercised jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331 (West Supp.1991) since the complaint alleged causes of action arising under federal law and under 28 U.S.C.A. § 1332(a)(2) (West Supp.1991) since Osei–Afriyie is a citizen of Ghana and his children are citizens of Canada and their complaint sought damages in excess of the jurisdictional minimum.

At this portion of the opinion, we would normally set forth the applicable standard of review for each of the issues raised in the appeal. However, for reasons we detail below, we need not decide any of the issues Osei–Afriyie raises on behalf of his children in this appeal. Thus, we are left only with issues related to the count of the complaint in which Osei–Afriyie sought to recover in his own right and will set forth only those standards applicable to his personal claims.

Osei–Afriyie claims that the district court mistakenly instructed the jury concerning the statute of limitations applicable to his intentional infliction of emotional distress claim. Osei–Afriyie did not advance a timely objection to the district court's jury instruction; as a result, we are limited to review of the district court's instruction for plain error. *See Choy v. Bouchelle,* 436 F.2d 319, 325 (3d Cir.1970) (applying plain error standard to review of jury instructions after defendant failed to object to charge at trial). We review for abuse of discretion the district court's dismissal of his motion for reconsideration due to lack of prosecution. *See Smith v. Oelenschlager,* 845 F.2d 1182, 1185 (3d Cir. 1988) (ruling that district court's dismissal of motion seeking new trial for failure to comply with Local Rule 20(e) was not abuse of discretion). Finally, we examine Osei–Afriyie's recusal argument for plain error since he did not request that the district judge recuse himself while these proceedings were pending in the district court. *See United States v. Schreiber,* 599 F.2d 534, 536 (3d Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979).

Plain errors are those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). They are errors that "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct.

1038, 1047, 84 L.Ed.2d 1 (1985). The Supreme Court has cautioned that the doctrine is to be used "sparingly," *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982), and only where the error was sure to have had "an unfair prejudicial impact on the jury's deliberations," *Young*, 470 U.S. at 16, n. 14, 105 S.Ct. at 1047, n. 14.

### III.

As far as we can glean from the record, Osei–Afriyie is a well-educated economist. He is not, however, a lawyer, and his lack of legal experience has nearly cost his children the chance ever to have any of their claims heard. The district court, in first sending this case to the jury on the statutes of limitations issue, correctly instructed the jury as to the various applicable limitations periods. However, the district court committed one important error, an error that is directly traceable to Osei–Afriyie's lack of experience as a lawyer.

■ When the district court instructed the jury about the applicable Pennsylvania statutes of limitations, it failed to take into account 42 Pa.Cons.Stat.Ann. § 5533(b) (Purdon Supp.1991). The most recent amendment to § 5533 states:

> (b) Infancy.—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

*Id.* This version of § 5533 went into effect thirty days following its enactment. The amendment was enacted on May 30, 1984. *See Urland ex rel. Urland v. Merrell–Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1276 (3d Cir.1987) (noting that the prior version of § 5533 did not permit tolling for infancy). The children were not admitted into the hospital until 1985, and no one has ever suggested that any of their claims could have arisen before then. Therefore, tolling for infancy is applicable. *See Bowser v. Zachary*, 375 Pa.Super. 481, 485, 544 A.2d 1022, 1024 (1988) (section 5533(b) tolls statute of limitations for personal injuries suffered during minority); *Mazur v. Merck & Co.*, 742 F.Supp. 239, 248 n. 12 (E.D.Pa. 1990) (same). As a result of § 5533(b), the statutes of limitations applicable to the children's claims have yet to begin to run.

■ Although Osei–Afriyie alluded to tolling of the statutes of limitations in his closing remarks to the jury, the record shows that he did not ask the district court for a jury instruction on tolling due to infancy, nor did he object to the absence of such an instruction. Not having been made aware of § 5533(b), the jury found that all of the children's claims were time-barred. Ordinarily, we would have to decide whether the district court's failure to instruct the jury concerning tolling due to infancy amounted to plain error. We need not make this decision because we hold that Osei–Afriyie, a non-lawyèr appearing *pro se*, was not entitled to play the role of attorney for his children in federal court. This holding puts us in accord with the only other two courts of appeals that have considered this issue.

In *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59 (2d Cir.1990), the court wrote:

> A litigant in federal court has a right to act as his or her own counsel. *See* 28 U.S.C. § 1654 (1982) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."). The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause. The right to conduct one's own litigation "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case."

However, we agree with *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam), that a non-attorney parent must be represented by counsel in

bringing an action on behalf of his or her child. The choice to appear *pro se* is not a true choice for minors who under state law, *see* Fed.R.Civ.P. 17(b), cannot determine their own legal actions. There is thus no individual choice to proceed *pro se* for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.

It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected.

*Id.* at 61 (citations omitted). As a result of its reasoning, the court remanded the appeal to the district court so that it could either appoint counsel under 28 U.S.C.A. § 1915(d) or dismiss the complaint without prejudice.

The Tenth Circuit is in accord. *See Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir.1986) ("We hold that under Fed.R. Civ.P. 17(c) and 28 U.S.C.A. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."); *see also Lawson v. Edwardsburg Public School,* 751 F.Supp. 1257, 1258 (W.D.Mich.1990) ("While a litigant has the right to act as his or her own counsel, see 28 U.S.C. § 1654, a non-attorney parent is not permitted to represent the interests of his or her minor child.").

Here, no party has raised the issue of whether Osei–Afriyie could represent his children as a *pro se* litigant. The record shows that Osei–Afriyie did not want to retain an attorney because he did not want to share any recovery from the litigation. *See* App. at 64–65.

In *DuPont v. Southern Nat'l Bank of Houston, Tex.,* 771 F.2d 874, 882 (5th Cir. 1985) (quoting *Richardson v. Tyson,* 110 Wis. 572, 578, 86 N.W. 250, 251 (1901)), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986), the court wrote:

As one court explained, "[T]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him."

Since no competent party here had the incentive to draw the district court's attention to the fact that the children should have been represented by a qualified attorney, we do not view this issue as waived. The right to counsel belongs to the children, and, under the cases from the Second and Tenth Circuits discussed above, the parent cannot waive this right.

In accord with the decisions discussed above, we hold that Osei–Afriyie was not entitled, as a non-lawyer, to represent his children in place of an attorney in federal court. As a result, we will vacate the judgment entered against the children on their claims.

On remand, one of several scenarios may occur. Osei–Afriyie may decide to secure a lawyer and proceed once again with his children's claims. Osei–Afriyie may determine not to pursue the litigation, in which event the children's claims can be dismissed without prejudice, to accrue for purposes of the relevant statutes of limitations when the children reach eighteen years of age, or sooner if they become emancipated minors. Finally, the district court may exercise its discretion pursuant to 28 U.S.C.A. § 1915(d) (West 1966) to appoint counsel to represent the children, if it sees particular merit to their claims and believes that the children otherwise would not be able to secure qualified legal representation and that they would be prejudiced by having to wait until they became old enough to sue on their own. We wish to note that Osei–Afriyie has not secured *in forma pauperis* status for himself, and we are not suggesting that the children's claims are appropriate for appointment of counsel under § 1915(d). That issue is one for the district court in the first instance.

Since we will vacate the district court's judgment against the children on their claims, it is unnecessary for us to examine whether the district court properly construed the portion of the complaint that contained their claims. It is also unneces-

sary for us to decide whether the district court committed plain error when it failed to take into account the Pennsylvania statute that tolls the applicable statutes of limitations in civil actions brought by minors until the child reaches the age of eighteen.

## IV.

We now turn to examine the issues Osei–Afriyie raises that relate to Count Five of the complaint, the sole count he brought in his own right. In Count Five, Osei–Afriyie expressly sought to recover for intentional infliction of emotional distress.

The district court instructed the jury that there was a two year statute of limitations applicable to claims of intentional infliction of emotional distress. *See* 42 Pa.Cons.Stat. Ann. § 5524(7) (Purdon Supp.1991). Osei–Afriyie filed his complaint on March 7, 1990. Therefore, for his claim to have been timely it must have accrued within the two years preceding the filing of his complaint.

■ As plaintiff, under Pennsylvania law, Osei–Afriyie had the burden of proving at trial that he filed his own action within the two year statute of limitations applicable to his claim. *See McPhilomy v. Lister*, 341 Pa. 250, 252, 19 A.2d 143, 144 (1941) (holding that since "the statute of limitations was pleaded, it was incumbent upon the plaintiff to prove facts sufficient to remove the bar of the statute"); *Corbett v. Weisband*, 380 Pa.Super. 292, 308, 551 A.2d 1059, 1067 (1988) (holding that "[w]here the statute of limitations is at issue, the burden of proof falls on the plaintiff to demonstrate that the cause of action is not barred by the passage of time and that his or her failure to file the action in a timely fashion is excusable."), *alloc. denied*, 524 Pa. 607, 569 A.2d 1367 (1989).

■ Osei–Afriyie introduced one witness at trial, his wife, Ampofoh. She testified that Osei–Afriyie learned on the morning of July 25, 1985 that Quinidine had been administered to his children. In the complaint, Osei–Afriyie traces part of his alleged emotional distress to having watched while "his minor children [were] used as research subjects without their consent." Whatever emotional distress he suffered on July 25, 1985 was clearly time-barred because Osei–Afriyie did not bring suit until 1990.

Osei–Afriyie also claims that his emotional distress was caused in part by Dr. Stull's publication of his research on the use of Quinidine to treat malaria. As noted above, Dr. Stull's article was published in a medical journal dated May, 1987. The date of the journal was also more than two years before Osei–Afriyie commenced suit.

■ In his brief on appeal, Osei–Afriyie argues that he did not learn of Dr. Stull's article until shortly before he brought suit. He thus contends that his cause of action was timely, since he did not sooner discover the article, nor should he reasonably have discovered it any sooner. Osei–Afriyie had the burden of convincing the jury that his suit was timely. His sole witness at the statute of limitations phase of the trial, Ampofoh, gave no testimony as to when Osei–Afriyie learned of the article. Thus, it was not unreasonable for the jury to rule in favor of the hospital and Dr. Stull since Osei–Afriyie produced no evidence that he met the statute of limitations. Indeed, when the party with the burden of proof comes forth with no evidence, and no other evidence is before the jury, judgment must be entered against that party because it has failed to meet its burden. *See Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir.1976) (noting that "a trial judge, when deciding on a motion for directed verdict or for judgment notwithstanding the verdict, should not determine whether the evidence 'preponderates' but must confine himself to ascertaining whether the party against whom the motion is made adduced sufficient evidence to create a jury issue"), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (noting that entry of summary judgment is proper "against party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial").

▮ Osei–Afriyie also contends on appeal that Count Five asserts claims for misrepresentation and violation of his civil rights. He then goes on to argue that the district court failed to submit these claims to the jury. Osei–Afriyie failed to make a timely objection at trial to the district court's omission of these counts from its jury instructions; thus, we once again review for plain error. Even if Count Five's language read free-form could be stretched to raise inferentially these additional claims, the district court did not commit plain error in omitting them from its charge to the jury.

The statute of limitations for misrepresentation is two years under Pennsylvania law. *See* 42 Pa.Cons.Stat.Ann. § 5524(7) (Purdon Supp.1990). The statute of limitations for any civil rights claim that Osei–Afriyie sought to plead under 42 U.S.C.A. § 1983 as arising from these events is also two years, because § 1983 claims "borrow" a state's personal injuries limitations period and Pennsylvania's statute of limitations for personal injuries is two years. *See Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir.1989) ("The statute of limitations for any Section 1983 claim is the state statute which limits actions for personal injuries.").

The jury found, pertinent to Osei–Afriyie's emotional distress claim, that he knew of the treatment to his children more than two years before he brought suit. The jury also found Osei–Afriyie failed to carry his burden of proof that his emotional distress claim arising out of the article was timely. Since Osei–Afriyie's misrepresentation and civil rights claims are based upon the very same facts as his intentional infliction of emotional distress claim, it seems plain that the jury would have found these additional claims time-barred as well. The district court's omission of these claims from its charge to the jury did not constitute plain error. Given the facts upon which the jury based its verdict on Osei–Afriyie's emotional distress claim, it

would have also been compelled to find against his other purported claims on statute of limitations grounds.

▮ We must next examine the district court's dismissal of that portion of Osei–Afriyie's post-trial motion for reconsideration insofar as it concerned his own claims. The district court dismissed his motion for reconsideration because he did not either order a transcript or certify that there was good cause why a transcript was unnecessary, as is required under Local Rule 20(e) of the United States District Court for the Eastern District of Pennsylvania. We review the district court's dismissal of the motion for abuse of discretion. *See Oelenschlager*, 845 F.2d at 1183 (utilizing abuse of discretion standard to review district court's Local Rule 20(e) dismissal of post-trial motion); *Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir.1988) (same).

We noted in *Smith* that "the judges of the district court deliberately framed Rule 20(e) in mandatory terms." *Smith*, 845 F.2d at 1184. Osei–Afriyie maintains on appeal that he did not have to provide the district court with a transcript of proceedings because his post-trial motion contained enough relevant material appended to it for the district court to decide the motion on its merits. Rule 20(e) does not require the movant to provide a transcript in all cases. Instead, the movant either must provide a transcript or "file a verified motion showing good cause to be excused" from filing a transcript.

If Osei–Afriyie did not believe a transcript was necessary for the district court to rule upon his post-trial motion, he should have filed a verified motion showing good cause to be excused from filing a transcript. Instead, Osei–Afriyie did nothing. As we wrote in *Smith*, since our Court insists upon the "faithful adherence to our rules, we cannot fault a district court judge who applied the same approach." *Id.* We hold in these circumstances that the district court did not abuse its discretion in dismissing Osei–Afriyie's post-trial motion for lack of prosecution.

Accordingly, we cannot examine the particular merits of the three arguments in

support of a new trial that Osei–Afriyie set forth in his motion for reconsideration. However, we have already considered similar arguments that Osei–Afriyie makes on appeal because, as we wrote in *Hewlett*, 844 F.2d at 115, n. 3, "[o]bjections to [jury instructions given] at trial are ripe for review upon appeal from a final order whether or not they are raised on motion for a new trial."

▆ Finally, we must examine Osei–Afriyie's argument that the district judge should have recused himself due to "unfairness" and "prejudice." A federal statute, 28 U.S.C.A. § 455(b)(1) (West Supp.1991), provides that a judge "shall ... disqualify himself ... [w]here he has a personal bias or prejudice concerning a party...." As noted earlier, since Osei–Afriyie failed to move for recusal while this matter was before the district court, we once again review for plain error. *See Schreiber*, 599 F.2d at 536.

Osei–Afriyie's claim of "unfairness" is based upon the district judge's unwillingness to hear argument, after the jury was sent off to deliberate, on Pennsylvania cases holding that the inability to discover certain causes of action or the concealment or misrepresentation of certain causes of action tolls the applicable statutes of limitations. Following the jury's verdict the next morning, the district judge allowed Osei–Afriyie to present his legal argument.

Osei–Afriyie has failed to point to any "unfairness" that required the district judge to recuse. As noted earlier, Osei–Afriyie did not advance a timely objection to the district judge's jury instructions nor did he suggest on the record before the jury retired that the district judge give an instruction on the so-called "discovery rule" or with respect to concealment and misrepresentation. In fact, the district judge did charge the jury, prior to the start of its deliberations, as follows:

Ladies and gentlemen of the jury, if you find that there was anything hidden from the plaintiff, that in other words, he could not discover this then the statute did not begin to run. His position is that it was hidden—he claims that Dr. Stull

conducted studies of the use of Quinoidine [sic] and—if you find that was hidden from him and he could not discover it, the statute could not begin to run. App. at 42–43. We conclude that the instructions the district judge gave were not so problematic as to evidence any "unfairness" that shows that it was plain error for the district judge not to have recused himself in this suit.

▆ Osei–Afriyie also contends that the district judge should have recused due to "prejudice" evidenced by the district judge's comments to him following the return of the jury's verdict. Following the verdict, the district judge allowed Osei–Afriyie wide latitude to address how he believed the district judge erred in his instructions to the jury. During the colloquy between Osei–Afriyie and the district judge, the district judge informed Osei–Afriyie that his presentation of his and his children's cases would have been aided by the assistance of a lawyer. The district judge also inquired as to what damages Osei–Afriyie would have hoped to prove, since both children recovered fully without complication from their bouts with malaria and since the children were not directly identified in the article that Dr. Stull wrote.

Having reviewed the entire record of this brief trial, we disagree with Osei–Afriyie's charge that the district judge was prejudiced against him. Before the return of the jury's verdict, the district judge never disparaged Osei–Afriyie's *pro se* status nor did the judge comment upon the damages that might be available to him and his children. Instead, the record shows that the district judge was, if anything, extremely indulgent of Osei–Afriyie's naïveté in the law. As an example of this indulgence, we note that the district judge allowed Osei–Afriyie, over the repeated objections of the attorney for the hospital and Dr. Stull, to tell the jury in his closing argument his version of facts that had not been placed in evidence by his sole witness at trial.

The record shows that the district judge was scrupulously fair to Osei–Afriyie. The district judge's post-verdict comments do not seem to us to evidence any prejudice

whatsoever. Instead, as our disposition of the children's claims has shown, the district judge, in commenting that Osei–Afriyie could have benefitted from trained legal assistance, was merely stating what has proven to be a true proposition; in commenting that any damages available on this complaint seemed minimal, the district judge appears to have been stating the legal truism that if someone suffers a battery without resulting injury all that person can recover is a nominal amount. *See* Restatement (Second) of Torts § 907 comment a (1977).

For these reasons, we hold that the district judge did not commit plain error in failing to recuse.

### V.

For the reasons set forth above, we will affirm the district court's judgment to the extent that the jury found Osei–Afriyie's claims in his own right to be time-barred. We also will affirm the district court's dismissal of Osei–Afriyie's post-trial motion for lack of prosecution and its decision not to recuse from the case despite the reasons that Osei–Afriyie asserts for the first time on appeal. However, we will vacate the district court's judgment to the extent that it adjudicated the children's claims and will remand their claims for further proceedings consistent with this opinion.