**Lincoln J. HERBERT**

v.

**Robert J. REINSTEIN, et. al.**

Civil Action No. 97–0457.

United States District Court,
E.D. Pennsylvania.

Aug. 22, 1997.

Richard P. Myers, Paul, Reich & Myers, P.C., Philadelphia, PA, Glenn J. Brown, Quakertown, PA, for plaintiff.

Carl W. Hittinger, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for defendants.

### *MEMORANDUM*

NEWCOMER, Senior District Judge.

Presently before this Court are defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11, and in the Alternative, for Dismissal Under Federal Rule of Civil Procedure 12(b)(6), and plaintiff's response thereto, and defendants' reply thereto, and plaintiff's rebuttal to defendants' reply. For the reasons that follow, this Court grants in part and denies in part defendants' Motion.

### I. *Facts and Procedural History*

This action grows out of an ongoing and contentious dispute between the plaintiff Lincoln Herbert and the defendants Temple

University School of Law ("Law School"), Temple University ("Temple") and Robert J. Reinstein, Dean of the Law School. Prior to this instant action, Mr. Herbert sued the same defendants from this action in this Court. In this earlier action, this Court made extensive findings of fact and conclusions of law. *Herbert v. Reinstein*, No. CIV. A.94–5765, 1994 WL 587095 (E.D.Pa. Oct.21, 1994). In order to put the instant action into its proper context, the Court will set forth the relevant factual and procedural background from Mr. Herbert's first action.

On May 3, 1994, Mr. Herbert, a student at the Law School, was involved in an altercation with a homeless person, whom Mr. Herbert sprayed with "pepper gas." An asthmatic Law School employee was exposed to some of the pepper gas left in the wake of the incident and was hospitalized with injuries caused by the gas. Dean Reinstein, having solicited accounts of the events of May 3, 1994, from various witnesses and Temple campus police, called Mr. Herbert into his office on May 5, 1994. Mr. Herbert claimed that he had inadvertently sprayed the employee while attempting to ward off an attack by a homeless person brandishing a knife. Reports by the police and witnesses contradicted Mr. Herbert's account of the incident. These reports indicated that the homeless person did not have a knife and that Mr. Herbert was not in any danger inside the law school. Dean Reinstein decided that Mr. Herbert represented a "clear and present danger" to the law school community, whereupon Dean Reinstein suspended Mr. Herbert and referred the case to the Law School's disciplinary system.

Prior to Mr. Herbert's suspension on May 5, 1994, other activities of Mr. Herbert at the law school had come to the attention of Dean Reinstein. While a student at the Law School, Mr. Herbert founded and acted as president of the Western Heritage Society (WHS), a "right-wing" student organization. The opinions of Mr. Herbert and the WHS were unpopular among many students, faculty and administrators at Temple and the Law School. Dean Reinstein was aware of various other incidents in which Mr. Herbert had been involved in physical and verbal altercations. Mr. Herbert alleged that Dean Reinstein's stated reason for the suspension was a pretext and that Dean Reinstein actually suspended Mr. Herbert because he disagreed with Mr. Herbert's political philosophy.

At the proceedings before the disciplinary committee, Mr. Herbert was charged with violating the Law School Code of Student Conduct by engaging in acts of violence and by telling falsehoods to a University administrator. After reviewing all the evidence, the panel found Mr. Herbert not guilty of engaging in acts of violence and guilty of telling falsehoods to Dean Reinstein. On October 17, 1994, the disciplinary committee voted to suspend Mr. Herbert from the law school until January 1997, at which time he could return as a student on a probationary basis. The committee also voted to require that Mr. Herbert undergo 100 hours of psychological therapy and perform 100 hours of community service. The sanction requiring community service was removed through the Law School's internal appeals process.

On September 20, 1994, Mr. Herbert, proceeding *pro se*, filed a motion for a temporary restraining order (TRO), a memorandum of law in support of his request for a TRO and a complaint (Original Complaint) with this Court. The defendants named in that suit were the same defendants as those named in the instant lawsuit. In the Original Complaint, Mr. Herbert alleged violations of his due process, free speech and free association rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

This Court denied Mr. Herbert's motion for a TRO on September 21, 1994, and ordered consolidation of plaintiff's request for a preliminary injunction with a trial on the merits under Federal Rule of Civil Procedure 65(a)(2). Plaintiff's case was tried before this Court, which entered judgment in favor of defendants and rendered findings of fact and conclusions of law in a Memorandum Opinion dated October 21, 1994. The Court found, *inter alia*, that Mr. Herbert was afforded all the process he was due in his initial suspension from the Law School on May 5, 1994 and at the subsequent internal Law School disci-

plinary hearing held on October 3 and 10, 1994.

Plaintiff appealed this Court's Order, dated October 21, 1994, to the United States Court of Appeals for the Third Circuit on November 18, 1994. On October 6, 1995, a three judge panel of the Third Circuit affirmed this Court's denial of injunctive relief in an unpublished opinion. *Herbert v. Reinstein,* No. 94–2138, slip op. at 18, 70 F.3d 1255 (3d Cir. Oct.6, 1995). However, the majority reversed in part, finding that while the internal disciplinary process eventually afforded Mr. Herbert sufficient due process, he had not been provided all the process he was due at his initial May 5, 1994 meeting with Dean Reinstein. *Id.* at 13. Specifically, the majority found that Dean Reinstein should have raised again with Mr. Herbert his prior incidents of aggressive behavior and should have informed Mr. Herbert that these prior incidents influenced his decision to temporarily suspend Mr. Herbert. *Id.* The Third Circuit remanded the case to this Court for determination of any damages. This Court held a damages hearing on February 20, 1996. On February 23, 1996, this Court entered findings of fact and conclusions of law, awarding Mr. Herbert one dollar in nominal damages. *Herbert v. Temple University School of Law,* No. CIV.A.94–5765, 1996 WL 84849, at *4 (E.D.Pa. Feb.23, 1996). Subsequently, Temple sent Mr. Herbert a check for the award, which he rejected. Mr. Herbert appealed *pro se* this Court's February 23, 1996 Order. His appeal was recently dismissed by the Third Circuit on procedural grounds.

On January 21, 1997, Mr. Herbert filed the instant action against numerous defendants, including the defendants who were named in his first suit. On March 7, 1997, certain of the defendants served plaintiff's counsel with a motion for sanctions against plaintiff and plaintiff's counsel pursuant to Federal Rule of Civil Procedure 11. In the face of this motion for sanctions, plaintiff, represented by new lead counsel, filed an Amended Complaint on March 28, 1997.

Mr. Herbert's Amended Complaint dropped many of the claims and defendants named in the first complaint. The Amended Complaint names as defendants Temple, the Law School and Dean Reinstein. The Amended Complaint consists of four counts. In Count 1, Mr. Herbert alleges that his rights under 42 U.S.C. § 1983 and the Fourteenth Amendment were violated by unlawful proceedings. In Count 2, Mr. Herbert alleges that his rights under § 1983, the Fourteenth Amendment, and 20 U.S.C. § 1232h were violated by the imposition of a sanction requiring psychiatric counseling. In Count 3, Mr. Herbert alleges that Temple breached a covenant of good faith and fair dealing through its actions. In Count 4, Mr. Herbert alleges that his Section 1983 and First Amendment rights were violated by a denial of rights of speech, petition, assembly, and association from 1993 to 1997.

Presently before this Court is defendants' motion for Rule 11 sanctions, and in the alternative, for dismissal under Federal Rule of Civil Procedure 12(b)(6).[1] The defendants argue (1) that Counts 1, 2, and 4 of the Amended Complaint are time-barred under the applicable two-year statute of limitations; (2) that Counts 1, 3, and 4 are barred by the doctrines of *res judicata* or collateral estoppel; and (3) that Count 2, in addition to being time-barred, is without merit as a matter of law. In the motion for sanctions, defendants move in the alternative for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

Mr. Herbert rejoins that Counts 1, 2, and 4 are not time-barred for two reasons. First, Mr. Herbert asserts that his cause of action did not accrue until January 18, 1995, the date on which the plenary faculty affirmed in part the sanctions handed down by the disciplinary committee. Second, Mr. Herbert argues that since January 18, 19, and 20, 1997, fell on Saturday, Sunday, and Martin Luther King, Jr. Day, Federal Rule of Civil Procedure 6(a) allowed him to file on the January 21, 1997. Mr. Herbert argues that Counts 1, 3, and 4 should not be barred by *res judicata*

---

1. Defendants Temple and the Law School originally filed this motion on April 23, 1997, and Dean Reinstein, who at the time of the filing of the motion had not been properly served with plaintiff's complaint, joined in this motion on June 5, 1997.

or collateral estoppel because in his Complaint, dated September 15, 1994, he only raised the issue of his initial suspension by Dean Reinstein, and not the suspension and sanctions determined by the disciplinary committee. Mr. Herbert argues that Count 2, alleging violations of Section 1232h, is not lacking in merit, and therefore not sanctionable. Mr. Herbert's counsel also argues that their investigation, including a polygraph examination, was sufficient to determine that their client was "telling the truth."

## II. Standards

### A. Rule 11 Standard

Courts are to give the Federal Rules of Civil Procedure their plain meaning. *Business Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 540, 111 S.Ct. 922, 927, 112 L.Ed.2d 1140 (1991) (citing *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989)). Under Rule 11, "[a] signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Business*, 498 U.S. at 540, 111 S.Ct. at 927 (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1335 (2d ed.1990)). " 'The certification requirement now mandates that *all* signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings.' " *Business*, 498 U.S. at 542, 111 S.Ct. at 928 (quoting Wright & Miller, § 1331) (emphasis added by Supreme Court). To comply with these requirements, counsel must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988); *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986). Rule 11 is aimed at curbing the abuses of the judicial system. *Business*, 498 U.S. at 540, 111 S.Ct. at 927; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 385, 110 S.Ct. 2447, 2450, 110 L.Ed.2d 359 (1990). The main purpose of the rule is not to award parties who have been victimized by vexatious litigation but rather to deter baseless filings and curb abuses. *Business*, 498 U.S. at 533, 111 S.Ct. at 929.

Rule 11 is governed by the objective reasonableness under the circumstances standard. *Business*, 498 U.S. at 539, 111 S.Ct. at 927; *Pensiero*, 847 F.2d at 94. The Third Circuit has explained that courts should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring into what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987) (citations and internal quotations omitted).

Determining whether an attorney has violated Rule 11 involves a consideration of three types of issues. First, the court must consider factual questions regarding the nature of the attorney's pre-filing inquiry and factual basis of the pleading or other paper. Second, legal issues are raised in considering whether a pleading is "warranted by existing law or a good faith argument" for changing the law and whether the attorney's conduct violated Rule 11. Third, the district court must exercise discretion to tailor an "appropriate sanction." *Cooter*, 496 U.S. at 398, 110 S.Ct. at 2450.

The Third Circuit has identified five factors which should be considered in determining the reasonableness of an attorney's pre-filing inquiry: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity for reliance on a client for underlying factual information; (3) the plausibility of the legal position advocated; (4) whether the case was referred to the signer by another member of the Bar; and (5) the complexity of the legal and factual issues implicated. *Pensiero*, 847 F.2d at 95.

### B. Standards for 12(b)(6)

Pursuant to Fed.R.Civ.P. 12(b)(6), a court should dismiss a claim for failure to state a cause of action only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104

S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Because granting such a motion results in a determination on the merits at such an early stage of a plaintiff's case, the district court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 664–65 (3d Cir.1988) (quoting *Estate of Bailey v. County of York*, 768 F.2d 503, 506 (3d Cir.1985)).

## III. Discussion

### A. Counts 1, 2, and 4 are Time–Barred

■ In § 1983 actions, the applicable period of limitations is borrowed from the statute of limitations on personal injury actions of the state in which the alleged violations occurred. *Wilson v. Garcia*, 471 U.S. 261, 275, 105 S.Ct. 1938, 1946, 85 L.Ed.2d 254, 266 (1985). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. *Osei–Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 885 (3d Cir. 1991). A § 1983 cause of action accrues on the date when a plaintiff knew or should have known his or her rights had been violated. *Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir.1991). In *Chardon v. Fernandez*, a case involving an alleged politically-motivated dismissal of a nontenured administrator, the Supreme Court took pains to explain the precise moment at which a § 1983 cause of action accrues: "[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful. The fact of termination is not itself an illegal act." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (citations omitted) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 259, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, 441 (1980)).

In a case factually similar to the one at bar, *Siblerud v. Colorado State Board of Agriculture*, 896 F.Supp. 1506 (D.Colo.1995), the court held that the injury allegedly suffered by plaintiff, a graduate student dismissed from Colorado State University for academic violations, accrued on the date on which the plaintiff had first received a letter notifying him of his dismissal. The court cited *Ricks* for the proposition that " '[t]he grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made.' " *Id.* at 1511 (quoting *Ricks*, 449 U.S. at 261, 101 S .Ct. at 506).

■ Here, the allegedly illegal act charged in Counts 1 and 2 was the denial of due process in the Law School's disciplinary proceedings and the sanctions issued at those proceedings. The alleged deprivation of due process and violations of Section 1232h occurred when Mr. Herbert first knew or should have known that he was deprived of his rights. Mr. Herbert knew that he was facing these sanctions when they were handed down by the Disciplinary Committee on October 17, 1994; Mr. Herbert's alleged injury thus occurred on October 17, 1994. The statute of limitations on Mr. Herbert's cause of action began to run on October 17, 1994; Mr. Herbert did not file his action until approximately two years and three months from the date his cause of action accrued. Therefore, Counts 1 and 2 are time-barred.

■ The portions of Count 4, which allege deprivations of Mr. Herbert's First Amendment rights that occurred before January 18, 1995, are also time-barred. In Count 4, Mr. Herbert claims that his First Amendment rights were violated from September 1993 to January 1997. Clearly, any portion of Count 4 which is based on events that occurred before January 18, 1995 would be time-barred by the two-year statute of limitations for § 1983 claims. Plaintiff himself admits that his cause of action could not have accrued any later than January 18, 1995.

In an apparent attempt to save any claim that he may have had before January 18, 1995, plaintiff alleges that defendants committed continuing civil rights violations within the two-year period prior to his filing of this instant action, which purportedly works to reach back and bring the older time-barred claims within the statute of limitations. In his complaint, Mr. Herbert alleges that the defendants' actions constituted a "continuing course of conduct which violated

[his] First Amendment Rights from September 1993 to January 1997." Presumably paragraphs 51–53 of Mr. Herbert's Amended Complaint are meant to establish that the statute of limitations on his claims from before January 18, 1995 is tolled by the doctrine of "continuing violations."

This claim of continuing violations fails for two reasons. First, courts are generally wary of extending the doctrine to save claims arising outside of the employment discrimination area. *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 n. 3 (6th Cir.1995) (quoting *McGregor v. Louisiana State Univ. Bd. Of Supervisors*, 3 F.3d 850, 866 (5th Cir.1993)). Second, the events alleged in paragraphs 51–53 of Mr. Herbert's Amended Complaint are merely the continuing effects of his suspension handed down by the disciplinary panel. Since both this Court and the Third Circuit found those proceedings to be constitutional, Mr. Herbert cannot claim that the sanctions imposed by the panel on October 18, 1994 were unconstitutional. The only alleged deprivation of First Amendment rights which occurred after January 18, 1995, was the exclusion of Mr. Herbert from Temple's campus. Since this was merely the ongoing effect of his constitutionally valid suspension from the Law School, it is insufficient to sustain Count 4. This finding would be true even if his initial suspension had been found constitutionally infirm. *See Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994) ("A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination.").[2]

### B. Counts 1, 3, and 4 Barred by Res Judicata and Collateral Estoppel

■ Count 1 is also barred by collateral estoppel, as it was actually litigated and was necessary to the determination of the first lawsuit. The fact that there was due process at the Law School's internal disciplinary proceedings was an important factor in determining damages in plaintiffs' first action against these same defendants.

Collateral estoppel requires that " 'a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.' " *Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 n. 3 (3d Cir.1995) (quoting *Southern Pacific R.R. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)).

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether of the same or a different claim. *18 Moore's Federal Practice Digest* § 132.01[2] (1997). A party cannot avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first. Rather, the party bears the consequences of inadequate litigation by waiving the right to do so in a subsequent case. *Id.* at § 132.02[2][d]. "If the court in the former action assumed to adjudicate an issue or question not submitted by the parties in their pleadings nor drawn into controversy by them in the course of evidence, and bases its judgment on that adjudication, the judgment is not conclusive in a subsequent proceeding under the doctrine of collateral estoppel." *Id.* at § 132.03[2][c] (footnote omitted).

This Court specifically found that Mr. Herbert had received all process which he was due during the Law School's internal disciplinary proceedings. Mr. Herbert placed this matter into issue through his own introduction of evidence and testimony in his earlier lawsuit, and cannot now claim that the

---

**2.** The parties' disagreement about whether Rule 6(a) expands the statute of limitations is irrelevant. Since Mr. Herbert's complaint is based on events occurring before January 18, 1995, there is no need to address this issue.

question of whether he received due process during the disciplinary proceedings was not at issue. Although the Third Circuit reversed this Court's Oct. 21, 1994 Order insofar as it found that Mr. Herbert was denied due process at the time of his initial suspension, the Third Circuit specifically instructed that:

> [T]he district court, even if it determines that the initial suspension was justified, should take into account that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. However, we conclude that the proceedings before the Disciplinary Committee were constitutionally adequate and thus, as Herbert was suspended by the Committee, he is not entitled to injunctive relief. Furthermore, the court should, in considering damages, take into account that Herbert ultimately was suspended in procedurally proper hearings.

*Herbert v. Reinstein*, No. 94–2138, slip. op. at 17–18, 70 F.3d 1255 (3d. Cir. Oct. 6, 1995) (citation omitted).

This Court followed The Third Circuit's instructions by making the following finding of law:

> Herbert did not offer sufficient evidence demonstrating that any distress that he suffered was caused by the May 5, 1994, due process deprivation. Rather, the distress he described resulted from his ultimate suspension in October, 1994. Where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. Here, Herbert's claim for damages fails because Herbert did not set forth any injury stemming from procedural due process violation itself.

*Herbert v. Reinstein*, No. CIV.A.94–5765, 1996 WL 84849, at *3 (E.D.Pa. Feb.23, 1996) (citations omitted). Thus, both this Court and the Third Circuit found that Mr. Herbert's suspension by the disciplinary committee was constitutional. This determination was integral to this Court's decision to only award Mr. Herbert one dollar in nominal damages. Therefore, this Court's decision in Mr. Herbert's earlier suit is preclusive of Count 1 of his Amended Complaint.

*Res judicata* is a broader doctrine than collateral estoppel. The Supreme Court in *Cromwell v. County of Sac*, defined *res judicata* this way:

> [T]he judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

94 U.S. 351, 352, 24 L.Ed. 195, 197–98 (1876).

■ Certainly, Mr. Herbert cannot claim that he would have been unable to allege the facts regarding First Amendment violations occurring from September 1993 to September 20, 1994, the date he filed his first suit. Mr. Herbert made similar pleadings, albeit insufficiently, in his first suit. Mr. Herbert explicitly chose not to appeal this finding to the Third Circuit and is now barred from reasserting it in a second lawsuit.[3] His allegations of violations of his First Amendment rights occurring subsequent to the filing of his first complaint are merely the results of the suspension which this Court and the Third Circuit both found to be constitutional.

---

**3.** Indeed, the Third Circuit held:

> [Plaintiff] explicitly has chosen not to appeal certain issues, relying on this court to require another trial on the merits. In particular, the district court dismissed Herbert's allegations of First Amendment violations, concluding that although Herbert made such allegations at trial, "he failed to sufficiently plead these claims in his Complaint." Findings of Fact and Conclusions of Law at 6 n. 1. But Herbert chose explicitly not to appeal this issue. Br. At 3; Reply Br. At iv. Herbert's reliance on obtain-

> ing another trial is misplaced. Even if we were to require another trial on the merits, the district court still would be faced with what it believed to be a complaint that inadequately pled First Amendment violations. Since Herbert waived explicitly this issue on appeal and neither party has briefed this issue, however, we decline to review it.

Plaintiff cannot now do what the Third Circuit has already held that he cannot do, that is, resurrect his First Amendment claim to try to obtain a new trial.

Thus, Count 4 is barred by the doctrine of *res judicata.*

■ In Count 3, Mr. Herbert alleges no facts regarding what constitutes the alleged breach of a covenant of good faith and fair dealing. Instead, he merely incorporates the allegations listed earlier in his Amended Complaint, in Counts 1 and 2. Since there was extensive testimony at his first trial and explicit findings of fact regarding alleged violations of his rights under the Fourteenth Amendment in this Court's Order, dated October 21, 1994, this claim is also barred, as Mr. Herbert could have brought it at his first trial.

### C. Section 1232h Violation

Mr. Herbert's claim that the psychiatric sanctions imposed by the Law School violate 20 U.S.C. § 1232h is a question of *prima impressionis.* To the Court's best knowledge, there have been no cases brought under § 1232h, either alone or in conjunction with § 1983.

■ In Count 2, plaintiff claims that the imposition of a sanction by the Law School disciplinary panel requiring him to submit to a psychiatric evaluation and treatment, if treatment was recommended after the evaluation, violated 20 U.S.C. § 1232h and 42 U.S.C. § 1983. Defendants claim that Mr. Herbert has no claim under § 1232h. Although defendants' argument is not entirely clear, it appears that defendants argue that plaintiff may not maintain an action under § 1983 and § 1232h because (1) § 1232h does not provide a private right of action and (2) § 1983 does not provide a remedy for a violation of § 1232h.

To begin, this Court finds that it is irrelevant that § 1232h does not provide a private right of action because a right of private action may exist under § 1983 for the deprivation of a right even where there is no private right of action provided for within a statute. The Supreme Court has noted:

> [Whether a plaintiff may sue under § 1983 for the violation of a federal statute] is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute.

In implied right of action cases, we employ the four-factor test to determine "whether Congress intended to create the private remedy asserted" for the violation of rights. The test reflects a concern grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes. Because § 1983 provides "an alternative source of express congressional authorization of private suits," these separation of powers concerns are not present in a § 1983 case. Consistent with this view, we recognize an exception to the general rule that § 1983 provides a remedy for violation of federal statutory rights only when Congress has affirmatively withdrawn the remedy.

*Wilder v. Virginia Hospital Association,* 496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 2516 n. 9, 110 L.Ed.2d 455 (1990) (citations omitted). Thus, the question before this Court is whether § 1983 provides a remedy to plaintiff for a violation of § 1232h.

Section 1983 provides a remedial device to enforce rights under the United States Constitution and federal law. 42 U.S.C. § 1983. The only exceptions to this rule are (1) where the statute does not create an enforceable right within the meaning of § 1983 and (2) where Congress manifested in the statute itself an intent to foreclose its private enforcement, such as when there is a statutorily created comprehensive remedial system that provided for private action and left no room for additional private remedies under § 1983. *Farley v. Philadelphia Hous. Auth.,* 102 F.3d 697 (3d Cir.1996). A court must analyze the relevant statutory provisions "in the light of the entire legislative enactment." *Suter v. Artist M.,* 503 U.S. 347, 357, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992). The court must determine whether Congress intended the statutory provision to benefit the putative plaintiff. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). The language of the statute must be mandatory, not merely precatory. *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 18, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981). Finally, the right may

not be too vague and amorphous to be beyond the competence of the judiciary to enforce. *Golden State*, 493 U.S. at 106, 110 S.Ct. at 448.

After reviewing § 1232h, other related statutes and regulations, and the applicable case law, the Court finds that § 1983 does not provide a right of action for Mr. Herbert because § 1232h was not intended to benefit Mr. Herbert, and thus it does create an enforceable right. *See Golden State*, 493 U.S. at 106, 110 S.Ct. at 448 (holding that § 1983 does not provide a cause of action for a putative plaintiff where the federal statute, which plaintiff claims was violated, was not intended to benefit plaintiff).

Section 1232h provides, in relevant part, that "[n]o student shall be required, *as part of any applicable program,* to submit to survey, analysis, or evaluation that reveals information concerning," inter alia, "mental or psychological problems embarrassing to the student or his family ... without the prior consent of the student." 20 U.S.C. § 1232h (emphasis added). Mr. Herbert would appear to have a cause of action under Section 1232h if (1) the evaluation and examinations were "part of an applicable program" and (2) the sanction requiring psychiatric exam and possible psychiatric counseling before returning to the Law School were the sort of examination or psychiatric treatment covered by the statute. Thus, as an initial matter, this Court must determine whether the phrase "as part of any applicable program" expresses a contemplation on Congress's part of a situation like Mr. Herbert's.

Section 1221 of the General Educations Provisions Act provides that an "applicable program" is "any program for which the Secretary or the Department [of Education] has administrative responsibility as provided by law or by delegation of authority pursuant to law" and "includes each program for which the Secretary or Department has administrative responsibility under the Department of Education Organization Act or under Federal law effective after May 4, 1980." 20 U.S.C. § 1221(c)(1); 34 C.F.R. § 98.4(c)(1). The text of this statute and the regulations implementing it indicate that Section 1232h was meant to apply only to programs administered by the Secretary of Education.

Under the facts of this case, it is clear that Section 1232h was not intended to benefit Mr. Herbert because Mr. Herbert was not required to submit to a psychiatric evaluation and/or examination as part of any "applicable program." Indeed, defendant Temple states that it does not require any of its students, as part of any program, to submit to any type of psychological evaluation. Plaintiff simply fails to set forth any facts that would indicate he was required to submit to a psychological evaluation as part of his law school program. Instead, the facts in the Amended Complaint indicate that Mr. Herbert was required to submit to psychiatric evaluation and treatment as part of a disciplinary sanction, not as part of any "applicable program" within the meaning of §§ 1232h and 1221. Because Mr. Herbert was not required by Temple to submit to any psychological examination as part of any "applicable program," plaintiff cannot claim an enforceable right under Section 1232h. As such, the Court finds that Mr. Herbert cannot establish a § 1983 claim based on a violation of § 1232h.

### D. Rule 11 Sanctions and/or 12(b)(6) Dismissal

■ In the first instance, defendants have moved for Rule 11 sanctions against plaintiff and plaintiff's counsel based on their bad faith conduct in litigating this action. After giving this issue considerable thought, the Court concludes that it would be inappropriate to impose Rule 11 sanctions in this case. While Mr. Herbert and his counsel may have been mistaken in arguing that each of his claims were not time-barred or barred by the doctrines of collateral estoppel or res judicata, the questions were sufficiently fine that they do not merit Rule 11 Sanctions. Further, given the dearth of authority interpreting § 1232h, and the lack of authority specifically precluding Mr. Herbert's interpretation, the Court cannot use its finding that § 1232h does not provide Mr. Herbert with a cause of action under § 1983 as grounds for imposing sanctions. Therefore, the Court denies defendants' motion for sanctions.

However, for the purposes of Rule 12(b)(6), it appears to a certainty that the statute of limitations, the doctrines of *res judicata* and collateral estoppel, and the inapplicability of § 1232h to the facts of this case do not permit Mr. Herbert to recover on any of claims in his Amended Complaint. Therefore, the Court grants defendants' motion in the alternative for dismissal pursuant to Rule 12(b)(6). Plaintiff's Amended Complaint and action is dismissed with prejudice as against all defendants.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of August, 1997, upon consideration of the following Motions, and any responses thereto, it is hereby ORDERED as follows:

1. The Motion of Defendants for Sanctions Pursuant to Federal Rule of Civil Procedure 11 is DENIED;

2. The Motion in the Alternative for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED;

3. Plaintiff's Amended Complaint and action is hereby DISMISSED with prejudice as against all defendants; and

4. The Clerk of the Court shall CLOSE this case for statistical purposes.

AND IT IS SO ORDERED.